STATE ex rel. COM'RS OF LAND OFFICE v. JONES et al.

No. 32452. Jan. 28, 1947.

*176 P. 2d 992.*

Everett H. Welborn, Cecil C. Cohoon, Floyd Wheeler, and Richard A. Jackson, all of Oklahoma City, for plaintiff in error.

C. E. Baldwin and A. E. Montgomery, both of Tulsa, for defendants in error.

GIBSON, J. The parties to this appeal occupy the same relative position as in the trial court and will be referred to as plaintiff and defendant, respectively.

The plaintiff, holder as payee and mortgagee of note and mortgage covering farm lands given to secure the note, both executed by defendants Mabel M. Jones and William D. Jones, her husband, recovered against them personal judgment on the note and judgment for foreclosure of the mortgage. The trial court, on application of defendant filed after term, vacated the judgment, and it is from the order of vacation that plaintiff prosecutes this appeal.

The matter was heard in the trial court upon the petition to vacate and demurrer of plaintiff thereto. The demurrer was overruled and, plaintiff electing to stand thereon and declining to plead further, the court entered its order vacating the judgment.

The questions raised by the demurrer are urged in the following propositions presented in plaintiff's brief:

"(1) The defendant's petition and the various amendments and other pleadings do not state a cause of action against the plaintiff;

"(2) The statute of limitations had run prior to the filing of her action; and

"(3) The defendant's action against the state cannot be maintained without first obtaining permission of the state to be sued."

The statutory grounds specifically relied on for the vacation of the judgment are the third and fourth subdivisions of 12 O. S. 1941 §1031, which are as follows:

"Third. For mistake, neglect or omission of the clerk, or irregularity in obtaining a judgment or order.

"Fourth. For fraud, practiced by the successful party, in obtaining the judgment or order."

The petition to vacate, after reciting negotiations between the parties, whereunder the defendant was seeking, under alleged authority of 64 O. S. 1941 §215, to obtain settlement of the indebtedness on the basis of a less rate of interest than that sued for, and attaching thereto as an exhibit a letter indicating the terms and conditions upon which the loan could be reinstated on basis of paying the interest thereon at the rate of 5%, further alleged as follows:

"3. The defendant above named alleges in support of ground Number 1, above set forth that such purported judgment was rendered by the court in violation of an agreement made and entered into by and between the attorney of record for the plaintiff and the attorney of record for the defendants, that the respective attorneys would be duly notified of any further procedure taken or to be taken in said cause, and previous to the date of said judgment made and entered into a verbal understanding and agreement to the effect that plaintiff in said case would not take judgment in said cause without notice to Mr. W. M. Hall, the attorney for defendants; that at the time said understanding and agreement was entered into as aforesaid the case stood at issue and defendants had filed their answer to which plaintiff had filed a reply; that in violation of said agreement and without notice of any kind or character to the defendants or either of them or to the attorney of record representing them, the attorney for the plaintiff appeared before said district court of Rogers county, and thereupon took judgment in said case, and defendants further aver that at the time said purported judgment was rendered the court clerk of said court had failed, refused and neglected to print, publish and distribute a printed docket as provided by sections 663 and 664, Title 12, of the Oklahoma Stateutes of 1941, and that by reason thereof the attorney for the defendants was not notified even constructively that said case had been set for hearing, and Title 12, section 663 and 664 of the Oklahoma Statutes, 1941, had not been complied with."

There were other allegations of certain acts and conduct on the part of the prevailing party which constituted a fraud upon the defendants.

Under the first proposition it is urged in substance that the petition is insuficient to charge fraud; that notwithstanding such alleged agreement defendant and her counsel were bound by law to take notice of the time and place of trial and that the petition is fatally defective in that it does not state a valid defense to plaintiff's action.

To sustain the contention that the petition is insufficient to charge fraud, plaintiff relies upon the rule stated in 21 C. J. S. 230, as follows:

"Where the time and place of holding a term or session of court have been properly fixed and appointed, it is the duty of parties having business at such term or session to take notice thereof, or to suffer the penalty, whatever that may happen to be, of their ignorance."

—and upon Brockman v. Penn Mutual Life Ins. Co., 179 Okla. 98, 64 P. 2d 1208, and Sautbine v. Jones, 161 Okla. 292, 18 P. 2d 871, wherein we held that mere failure of the defendants or their attorney of record to learn that a case was set for trial does not constitute a sufficient ground upon which to vacate a judgment in their absence.

The rule has no application here, for the petition alleges an agreement that plaintiff's attorneys would notify defendants or their attorneys before any

190

further proceedings were had or any judgment was taken in the foreclosure and that such agreement was violated. For the purposes of the demurrer the allegation of the fact of such agreement is deemed to be true.

And the recitation in the decree of foreclosure that the defendants were present by their attorney is not to be accepted as true. Griffin et al. v. Galbraith, 114 Okla. 208, 247 P. 339.

This is not a collateral attack whereunder the basis of the attack must appear of record. But to the extent it is authorized by statute, and independently thereof to the extent it is based on fraud, it is a direct attack because it is authorized by law. Jones et al. v. Snyder, 121 Okla. 254, 249 P. 313.

The gist of the fraud contemplated by the statute is not an actual evil intention but the loss of some right which is deemed to have been caused by the prevailing party. Lane v. O'Brien, 173 Okla. 475, 49 P. 2d 171.

Hence, the sole question here touching the agreement is whether it, admittedly relied on by defendants, is sufficient in point of law to justify the attack upon the judgment.

In Ely Walker Dry Goods Co. v. Smith et al., 69 Okla. 261, 160 P. 898, we said:

"Ordinarily it is fraud which prevents a party from having a fair opportunity to present his case, and not fraud in the cause of action itself, which will afford ground for setting aside a judgment."

In United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93, it was said:

"But there is an admitted exception to this general rule, in cases where, by reason of some thing done by the successful party to a suit, there was, in fact, no adversary trial or decision of the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise."

In N. S. Sherman Machine & Iron Works v. Elzo et al., 65 Okla. 130, 183 P. 608, we said:

"The plaintiff in the present action invokes the equity powers of the court to relieve against the judgment obtained against it, on the ground of fraud, on the theory that the attorneys for the defendant failed to keep an agreement with the attorneys of plaintiff as to a continuance of said cause, and has cited various authorities holding that a court of equity may in certain cases set aside a judgment of a justice of the peace with leave to retry the case. We think this contention is sustained by authorities where the facts bring the case within the rules. Bohart v. Anderson, 26 Okla. 782, 110 P. 760; Splawn v. Perry, 40 Okla. 371, 138 P. 788; Southern R. Co. v. Planters' Fertilizer Co., 34 Ga. 527, 68 S. E. 95; Gulf, Colo. & Santa Fe R. Co. v. Stephenson et al. (Tex. Civ. App.) 26 S.W. 236; Sanderson et al. v. Voelcker. 51 Mo. App. 328; Cadwallader v. McClay, 37 Neb. 359, 55 N. W. 1054; 23 Cyc. 920."

The defendant herein was entitled to be heard upon the issues in this cause when it was presented to the court for determination. For the purpose of this review it appears as a fact the defendant was absent, not by reason of a neglect of duty on the part of her counsel, but because her counsel were led to believe by plaintiff's counsel that it was not necessary to appear. Attorneys are officers of the court and as such are authorized to and are deemed to speak with authority for their clients (Ex parte Garland, 4 Wall. 333, 378, 18 L. Ed. 366; Nolan v. St. Louis, etc., R. Co., 19 Okla. 51, 91 P. 1128). In Sharum v. Dean, 113 Okla. 95, 239 P. 666, it was said:

"It is the policy of the law to afford every party to an action a fair opportunity to present his side of a cause, and, while it is true the courts must require diligence on the part of litigants in being present when cases in which they are interested are being proceeded with, nevertheless, if the court or an officer of the court by their conduct

have misled parties as to the time cases will be tried, the absence of such parties will be excused."

In support of the contention that the petition is demurrable because it does not set forth matters which prima facie constitute a valid defense, there is cited Carlin v. Prudential Ins. Co., 175 Okla. 398, 52 P. 2d 721, and others, to the effect that such showing is a prerequisite and urged that it appears on the face of the pleadings in the action that plaintiff was entitled to the judgment rendered.

That such a showing is a prerequisite to obtain a vacation of the judgment is beyond question.

The answer of defendant to plaintiff's petition, on which judgment was rendered, was by reference made a part of the petition to vacate. Of the matters alleged in the petition on which issue was tendered were the following demands: 10% interest on principal indebtedness instead of 5%; $500 attorney's fees; and $27.75 cost incurred by plaintiff for supplemental abstract.

The petition to vacate further states defendant's status under section 75 of the Bankruptcy Act (11 U.S.C.A. §203), which she had invoked for the purpose of attaining the relief granted to farmers thereunder, and alleges as follows:

"Defendant further shows that she is now able, ready and willing to pay the amount of her original obligation in the amount of Five Thousand & No/100 ($5,000.00) Dollars plus interest at five per cent (5%), from April 25, 1929, the date of the execution of said notes, together with whatever legitimate cost may have accrued; and that the land involved in this action has never been sold, and the matter is still pending in this court and in Cause No. 5075, in the Federal Court of the Northern District of Oklahoma, styled in the matter of Mable Mae Jones, bankrupt."

Concerning the claim for the $27.75 item, there is said in the petition the following:

"That by the terms and conditions of said mortgage, it is also provided that said mortgagors shall pay any sums necessary for the protection of said mortgagee, or its assigns; that it was necessary for plaintiff to expend the sum of $27.75 to procure a supplemental abstract for the protection of the rights of plaintiff, and that the Johnston Abstract & Loan Company, Claremore, Oklahoma, was employed to make said supplemental abstract, and that said sum is reasonable for such service, and is secured under the terms of said mortgage."

The answer, which is specific in response thereto, says:

"Defendants deny that the plaintiff is entitled to the sum of $27.75 for procuring a supplemental abstract."

This issue is clear, the burden is upon the plaintiff, and it is alleged that the authority for the charge is contained in the mortgage.

The only provisions of the mortgage that are material as authority therefor are the following:

"It is expressly agreed by and between said parties hereto, that this mortgage is a first lien upon said premises; that the said parties of the first part will pay said principal and interest at the times when the same fall due, and at the place and in the manner provided in said note, and will pay all taxes and assessments against said land when the same are due each year, and will not commit or permit any waste upon said premises; that the buildings and other improvements thereon shall be kept in good repair, and shall not be destroyed or removed without the consent of said second party.

"It is further agreed and understood that said second party may pay any taxes or assessments levied against said premises, or other sums necessary to protect the rights of said second party, or assigns, and recover the same for the first parties with five per cent interest, and that every such payment is secured hereby."

It is evident from this language that the payments authorized by the second quoted paragraph have reference to those that are made in discharge of the

duties made encumbent upon the mortgagor by the preceding paragraph or something of like character that appertains to the preservation of the security afforded by the mortgage lien, and does not include a charge for a supplemental abstract for use in a mortgage foreclosure proceeding .

Since the defense here recognized as valid goes to only a portion of plaintiff's cause of action, the question arises whether such partial defense can be recognized as a valid defense in contemplation of the statute.

31 Am. Jur. p. 258, sec. 701, is as follows:

"The term 'meritorious defense,' within the meaning of the rule requiring such a defense in order to secure equitable relief from a judgment, has reference to a defense which has such merits that the law will recognize it and give effect thereto. In this connection, it has been declared that the facts constituting such defense must be sufficient to show that the judgment was unjust. It is not, however, necessary that there be a meritorious defense to the whole cause of action; the applicant for relief is regarded as having a meritorious defense where the original judgment was obtained for a larger sum than was actually due. Of course, satisfaction of the entire obligation constitutes a meritorious defense within the meaning of the rule under consideration."

See Williams v. Board of Com'rs of Kiowa County, 74 Kan. 693, 88 P. 70.

No emphasis is to be placed upon a particular quantum of the defense but upon the opportunity to dispense justice with due regard to the rights of both litigants, among which is the right to a day in court. To hold that it is encumbent upon defendant to plead a complete defense to plaintiff's demand would be to deny the benefit of trial when there is admitted the right of any recovery. And there is a clear case for the recognition of such right where the plaintiff's right, which is undenied and secured, is not imperiled by such recognition. See McEachern v. Brackett et al., 8 Wash. 652, 36 P. 690.

We hold that the denial of plaintiff's alleged right to recover the $27.75 expended for the supplemental abstract constitutes a valid defense in contemplation of the terms of the statute and that the petition to vacate is not demurrable for want of proper allegation of such defense.

The judgment in the cause was rendered May 1, 1941, and the petition to vacate was filed June 29, 1945.

It is manifest that the statutory period for the institution of the action to vacate had long since elapsed unless the statute has been tolled.

While the matter was pending on praecipe for order of sale filed December 15, 1941, the defendant, on January 15, 1942 (8½ months after rendition of judgment), filed in the United States District Court for the Northern District of Oklahoma, sitting in Bankruptcy, her petition praying for an extension of time to meet her obligations under section 75 of the Bankruptcy Act and amendments thereto, Public 420; 72nd Congress, chap. 8, as amended by the 73rd, 74th, 75th and 76th Congress. And thereafter, on January 17, 1942, C. E. Baldwin, Conciliation Commissioner for said Northern District, filed in the district court of Rogers county his motion as such commissioner to stay all proceeding until the bankrupty proceedings were disposed of. Omitting other matters and proceedings occurring in the meantime and not pertinent here, the defendant, by order of the bankruptcy court entered on April 24, 1945, was permitted to proceed in the state court "for the purpose of vacating or modifying said judgment, for the purpose and to the end that she may pay off said indebtedness, referred to in her application, and report back to this court the result of the proceedings in the state court." Thereafter, on June 29, 1945, the defendant filed her original application in form of a motion, which was later amended by leave of

court to conform to a petition upon which process was awarded and constitutes the pleading here involved. Thereafter, on July 7, 1945, the bankruptcy court, on application of the plaintiff to dismiss the bankruptcy proceedings in order to enable the plaintiff to proceed with the action of the state court, denied the application to dismiss but granted the plaintiff the right to proceed in the state court, and it was in pursuance thereof the matter of the vacation was heard. The question is whether the bankruptcy proceedings operated to stay the running of the statute.

The law applicable is to be found in the provisions of the Bankruptcy Act mentioned. It has been declared constitutional and its provisions construed by the United States Supreme Court in Kalb v. Feuerstein et al., 308 U. S. 433, 84 L. Ed. 370. In a situation such as exists in the instant case, it was said:

"We think the language and broad policy of the Frazier-Lemke Act conclusively demonstrate that Congress intended to, and did deprive the Wisconsin county court of the power and jurisdiction to continue or maintain in any manner the foreclosure proceedings against appellants without the consent after hearing of the bankruptcy court in which the farmer's petition was then pending."

And with reference to the stay of proceedings in the state court, which by the terms of the act become automatic with the filing of the petition in the bankruptcy court, and the purpose thereof, it was said:

"In harmony with the general plan of giving the farmer an opportunity for rehabilitation, he was relieved—after filing a petition for composition and extension—of the necessity of litigation elsewhere and its consequent expense. This was accomplished by granting the bankruptcy court exclusive jurisdiction of the petitioning farmer and all his property with complete and self-executing statutory exclusion of all other courts."

Eliminating the time between the filing of the petition in the bankruptcy court and the granting by that court of leave to proceed in the state court, less than one year elapsed between the rendition of the judgment and the filing of the petition to vacate. The petition to vacate was filed within the statutory period and, hence, the action of defendant is not barred.

Plaintiff's third proposition, to the effect that the action to vacate is against a sovereign state and cannot be maintained without first obtaining the state's permission, is devoid of any merit.

It is recited that, under the terms of the statutes (12 O. S. 1941 §§1031 to 1038, inclusive), in order to invoke the relief, it is encumbent upon defendant to file a petition therefor and have summons thereon as in the commencement of an action, and that this being an independent action, such consent is required, as declared by this court in Hawks v. Walsh, 177 Okla. 564, 61 P. 2d 1109; Patterson v. City of Checotah, 187 Okla. 587, 103 P. 2d 97.

The fallacy of the argument lies in the fact it is predicated upon the form rather than the substance of the action. Though independent in form, the action is none the less ancillary to the original action because its purpose is to determine rightfully the issue on which the judgment was rendered. The state is not entitled to take judgments in such actions which are immune to correction by the court under existing laws. The principle involved is stated in Colorado & S. Ry. Co. v. People, 53 Colo. 571, 128 P. 886 (quoting from Moore v. Tate, 87 Tenn. 725, 11 S. W. 935, 10 Am. St. Rep. 712), as follows:

" 'It is true that when the state voluntarily places itself in the position of a suitor, whether in its own courts or in those of a sister state, it will be held to have laid aside its sovereignty, and to have taken on the garb of an ordinary suitor, so far as concerns all proper matters of adjudication growing out of the cause of action sued on,' etc."

Affirmed.